# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3703

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| John Robert Francis, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 13, 2006
Filed: September 8, 2006

_____

Before SMITH, HEANEY, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

John Robert Francis pleaded guilty to possession of a single firearm after being convicted of a crime punishable with more than one year's imprisonment, in violation of 18 U.S.C. § 922(g)(1), 924(a)(2). At sentencing, the government presented evidence that Francis constructively possessed an additional 211 firearms by virtue of his actions as an employed consultant at a high-end firearms store with access to its weapons vault. The government sought a 10-level enhancement pursuant to § 2K2.1(b)(1) of the United States Sentencing Guidelines (U.S.S.G.). The district court, recognizing the unusual nature of this case, found that Francis did not constructively possess the additional firearms and declined to impose the requested enhancement.

We hold that Francis constructively possessed the firearms, and we remand the case for re-sentencing.

## I. *Background*

At age 65, Francis is a lifelong firearms enthusiast and has developed a reputation as a world-renowned firearms expert. In 1984, Francis operated a gun and pawn shop in Springfield, Missouri. Francis, a licensed firearms dealer, sold 178 firearms to Larry and Joyce Trimbell, Texas residents whose firearms dealer's license had lapsed. After selling the 178 firearms to the Trimbells, Francis was charged with conspiring with the Trimbells to distribute firearms without a license in violation of federal law. Francis pleaded guilty to one count and was sentenced to four years' imprisonment and four years' probation and fined $3,000. He served only 179 days in prison with the remainder of the sentence suspended.

After serving his sentence, Francis obtained permission from the United States Probation Office in Springfield to work in a preexisting family gun business. Francis relinquished all stock in the business to his wife, who possessed a federal firearms license. At the same time, the Probation Office reminded Francis that he was prohibited from acting as a gun dealer and that he was not to handle or possess firearms.

In 1987, Francis and his wife were concerned about the legality of their arrangement and were advised by Francis's probation officer to contact the Bureau of Alcohol, Tobacco, and Firearms ("ATF") for further direction on remaining compliant with federal law. The ATF warned Francis that he could not be "in control, that is, possession, of any firearms." Francis successfully completed his probation in 1990. In 1992, he applied for restoration of his firearms privileges. The ATF recommended that Francis's firearms privileges be restored but apparently never restored them because of the agency's budget constraints.

We now turn to the particulars of Francis's employment situation prior to the instant offense. Francis worked in the Wesley Richards Agency ("WRA"), which is a high-end firearms store owned by his wife. The collector's firearms sold in the WRA ranged in cost from $5000 to over $100,000 each. The inventory seized by the government consisted of 211 firearms valued at approximately $1.5 million. Adjacent to the WRA is a pawn shop that is also owned by Mrs. Francis and contained many firearms.[1]

In the course of his employment with WRA, Francis spent most of his time on the phone conducting business, namely valuing weapons. The rather exclusive nature of the WRA's inventory meant that the business had virtually no customers come into the store, which is why almost all business was conducted by phone.

In 2002, the ATF launched an undercover investigation into Francis's firearms-related activities. The government used a confidential informant to initiate transactions with Francis. On November 4, 2002, Francis handed Barton Westerman[2] a Bauska Arms large-caliber rifle and instructed him to loan the gun to the informant, who was to sell it on behalf of WRA. In late December of 2002, Francis and the informant were videotaped entering WRA's firearms vault, where Francis allowed the informant to handle what appeared to be a black-powder weapon. Francis did not actually handle the weapon on this occasion.

---

[1]The government did not attempt to attribute the firearms in the pawnshop to Francis.

[2]Westerman is Francis's step son. Westerman is an officer and employee of both the WRA and the pawn shop. He is listed as a "responsible party" on his mother's firearms dealer's license. Transactions were conducted through Westerman due to Francis's legal status.

The ATF continued its investigation throughout 2003 when federal agents executed search warrants on both the WRA and the adjacent pawn shop. The agents seized 211 high-end firearms from WRA's vault and 408 firearms from the pawn shop. The United States Attorney charged Francis by superceding indictment with three counts of violating federal firearms offenses. Pursuant to a written plea agreement, Francis pled guilty to one count of possession of a firearm after being convicted of a crime punishable with more than one year's imprisonment, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The government agreed to dismiss the other two counts alleged in the superceding indictment.

The Presentence Investigation Report ("PSR") calculated a criminal history category of I and a base offense level of 14. The PSR recommended a ten-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1) based upon Francis's possession of over 200 firearms contained in WRA's vault. After a three-level reduction pursuant to U.S.S.G. § 3E1.1, the PSR recommended a total offense level of 21. The resulting advisory Guidelines range was 37 to 46 months' imprisonment.

At sentencing, the government presented evidence that Francis had the combination to the WRA vault, his desk was next to the vault's entrance, and he regularly opened the vault at the start of the business day. The district court, however, sustained Francis's objection to the ten-level enhancement, finding that he did not constructively possess the firearms in the vault and holding him accountable for only the particular firearm identified in the offense of conviction—the one that he handed to Westerman. The court found that although Francis had access to the weapons in the vault and conversed with clients over the phone regarding gun sales, Francis did not possess the company firearms. The court reasoned that the guns were owned by a business corporation for which Francis worked and that, in such a context, access does not equal possession.

Without the ten-level enhancement, Francis was no longer eligible for a three-level reduction under § 3E1.1 but was eligible for a two-level reduction. Thus, the district court calculated a total offense level of 12 and a criminal history category of I, which resulted in an advisory Guidelines range of 10 to 16 months' imprisonment.

The court did not perform a standard departure analysis under the Guidelines. Considering the factors of 18 U.S.C. § 3553(a), the court repeatedly noted the unusual nature of this case and expressed concern over the Probation Office sending a "wrong message" in 1987 by approving Francis to work at a business that was heavily engaged in the firearms trade. The court also noted that the ATF had recommended reinstating his firearms privileges but could not due to lack of funding. The court then stated

> I don't see a need for incarceration to provide rehabilitation because I believe that . . . [Francis is] not going to be selling firearms. I have to believe [Francis has] learned [his] lesson. I don't think there's a need to put [him] in prison to protect the public because [he wasn't] really a danger to the public in the first place because . . . all of these sales were legitimate sales, high-end sales, anything but any promotion or assistance with other criminal activity.

> When I look at deterren[ce], [I] look at a five-month sentence, if I was at the low end of the guidelines, I'm not sure how much deterrent value there is to that. And then we're left with punishment and how much punishment you should receive.

> And under these circumstances, . . . I'm going to put you on probation for three years.

(Sent. 60–61).

The government asks this court to vacate Francis's sentence and to remand the case for re-sentencing using an advisory Guidelines range of 37 to 46 months. The

government appeals the district court's refusal to impose the 10-level enhancement but does not appeal the downward variance. We express no disagreement with the district court's downward variance, but constrained by our precedents, we hold that Francis constructively possessed the firearms contained within the WRA vault.

## II. *Discussion*

We accept the factual findings of the district court unless they are clearly erroneous, and we review de novo the district court's interpretation and application of the Guidelines. *United States v. Mathijssen*, 406 F.3d 496, 498 (8th Cir. 2005); *see also* 18 U.S.C. § 3742(e). Because this case involves the legal application of constructive possession, our review is de novo.

"A conviction for violating [18 U.S.C.] § 922(g) may be based on constructive or joint possession of the firearm." *United States v. Boykin*, 986 F.2d 270, 274 (8th Cir. 1993). Constructive possession occurs if there is (1) knowledge of the contraband's presence; combined with (2) control or dominion over either the contraband itself or the premises in which the contraband is concealed. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). We have repeatedly noted that "it takes more evidence of knowledge and control to prove that a defendant constructively possessed contraband found in someone else's apartment, as opposed to his own abode." *Id.* (quoting *United States v. Brett*, 872 F.2d 1365, 1369 (8th Cir. 1989)) (internal quotations omitted). The parties have not provided, and we are unaware of, any case dealing with an employee and business-owned property. However, we believe that the same rule applies to an employee's constructive possession of business-owned property, *i.e.*, increased evidence of knowledge and control is necessary for a finding of constructive possession.

Here, Francis obviously knew that the firearms were stored in the vault. His desk was at the entrance of the vault. More importantly, it is undisputed that he had the combination to the vault and opened it regularly. Francis's infrequent handling of

the weapons is immaterial. His constructive possession is established by his knowledge, close physical proximity, unfettered access, and occasional actual handling of firearms he was prohibited from possessing. Constructive possession may occur even in the context of employer ownership where the additional facts of unfettered access and control are present. Francis cites no authority excluding its application in this setting.

On remand, the district court should first recalculate an advisory Guidelines range. *United States v. Maurstad*, 454 F.3d 787, 789 (8th Cir. 2006). In doing so, the court should consider § 2K2.1(b)(1) in its entirety. The court should then determine whether any departure is warranted under the Guidelines. *Id*. A departure under the Guidelines "is part of the determination of the advisory Guidelines range," and "[a] sentence within the advisory Guidelines range is presumptively reasonable." *United States v. Whitrock*, 454 F.3d 866, 868 (8th Cir. 2006) (citations omitted). Thereafter, the court may impose a reasonable variance after due consideration of § 3553(a). *Maurstad*, 454 F.3d at 789. A troubling aspect of the instant case is that a defendant who pleaded guilty to possession of a single firearm became subject to substantially greater punishment through a sentence enhancement for conduct that time, the federal probation office, and the ATF may have lulled the defendant into believing was acceptable.

### III. *Conclusion*

We hold Francis constructively possessed the firearms in the WRA's vault. Therefore, we reverse and remand for re-sentencing consistent with this opinion.

_____