# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4137

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Mark Kevin Boston, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 11, 2007
Filed: July 16, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

The district court[1] found Mark Kevin Boston guilty of producing child pornography and sentenced him to 30 years imprisonment followed by lifetime supervised release. Boston appeals, arguing that the district court erred by denying his suppression motions and by imposing a sentencing enhancement for engaging in an offense involving sexual contact and that certain of the special conditions of his supervised release violate his constitutional rights. We affirm.

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

On April 10, 2005 at approximately 5:00 pm, off duty Des Moines police officer Benjamin Ihde was riding his bicycle on the Riverview Park trail when he saw Boston walking at a slow pace approximately 150 feet ahead of him. Boston was looking toward the river where a group of adults and children were fishing, and he appeared to be masturbating. As Ihde came closer to him, Boston turned to the side and Ihde saw that his penis was exposed. Ihde yelled, "Hey, put that thing away," stopped his bike, and identified himself to Boston as a Des Moines police officer.

Ihde asked Boston for identification. Boston took a backpack off his shoulder and set it on the ground before reaching into his pocket for his wallet. Ihde asked him what was inside the backpack, and Boston said it contained a knife and some pictures of children. Ihde asked, "Are they naughty pictures?" When Boston replied "Yes," Ihde told him to step away from the backpack. Ihde opened the bag and saw an 8" x 10" computer printout of a 12 or 13 year old boy with his genitals exposed. He closed the bag, told Boston to place his hands behind his head, and patted him down to confirm he did not have any weapons on his person.

After Ihde called police dispatch and requested assistance from on duty officers, Boston told him he had been urinating when Ihde first saw him, not masturbating. Officers Ballantini and Carter responded to Ihde's call and took Boston to jail where they searched his backpack. Inside the bag they found approximately 163 computer printed pictures of minors engaged in sexual activity, a Polaroid camera and film, a knife, a pellet gun, two condoms, a jar of petroleum jelly, a box of flushable wipes, pens, golf balls, and other items. When police searched his home the following day, they found that Boston had stored hundreds of pictures of child pornography, some of which matched the printouts found by Ihde in Boston's backpack during his arrest.

The backpack also contained several Polaroid pictures of a juvenile male, Z, whose penis was exposed. There was also writing on a note card that said, "[Z], white, no glasses, age 12, small build, going in seventh grade at Harding, size eight

shoe." Based on the note card description and the Polaroid pictures, Detective Larry Penland of the Des Moines Police Department's sexual abuse unit was able to identify Z as a local resident. Penland then arranged to interview Z at Harding Middle School on April 12, 2005.

Z told Detective Penland that he had been fishing near Riverview Park on August 13, 2004, when an older white male approached him and started asking a lot of "weird" sexual questions about his "privates." After being shown the Polaroid pictures of himself, Z acknowledged that the man had taken pictures of him and described the camera the man had used. His description matched the camera seized from Boston on April 10, 2005. Z also said the man had driven a small red car. When police later went to Boston's residence, they saw a small maroon or red colored Sable in the driveway. During the interview, Z told Detective Penland that the man had touched him in "sick places." He then became very upset and did not want to explain what he meant in any more detail.

Detective Penland told Z that he would like to show him a photographic lineup. Before showing the lineup Penland read Z the department's standard instructions for pretrial identification. After reading the instructions verbatim and confirming that Z understood them, Penland showed Z a photographic lineup which contained Boston's picture and five booking photos from the Polk County jail records. All six photographs showed male subjects with similar skin color, hair style, and age. Z looked at the photos for approximately thirty seconds before identifying Boston as the man from "the pond." When asked how sure he was on a scale of one to ten that Boston was the right man, Z responded "five." He stated that he did not recognize any of the other men pictured.

Boston was indicted for producing visual depictions of a minor engaged in sexually explicit conduct, using materials transported in interstate commerce, in violation of 18 U.S.C. § 2251(a), for receiving child pornography, in violation of 18

U.S.C. §2252(a)(2), and for possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Boston waived his right to a jury trial, and prior to trial the government moved to sever the counts charging receipt and possession of child pornography. Boston went to trial before the court on the single count of producing visual depictions of a minor engaged in sexually explicit conduct. The district court found Boston guilty of the production charge and dismissed the receipt and possession counts on the government's motion at sentencing.

The district court set Boston's base offense level under the advisory sentencing guidelines at 32, for sexually exploiting a minor by production of sexually explicit visual or printed material. U.S.S.G. § 2G2.1(a). The court then applied a two level enhancement because the offense involved a minor between the ages of 12 and 16, see U.S.S.G. § 2G2.1(b)(1)(B), and another two level enhancement because the offense involved a sexual act or sexual contact. See U.S.S.G. § 2G2.1(b)(2)(A). With a total offense level of 36 and criminal history V, Boston's advisory guideline range was 300 to 365 months. The district court sentenced him to 360 months imprisonment and recommended it be served in the sexual offender program at the Federal Medical Center in Butner, North Carolina. The district court also ordered that Boston be placed on lifetime supervised release following his term of imprisonment with eighteen special conditions. Special condition 4 prohibits Boston from viewing, possessing, or entering a location that sells any form of pornography or sexually explicit material deemed inappropriate by his probation officer or treatment staff. Special condition 14 prohibits him from accessing or possessing computers without prior written approval of his probation officer.

Boston appeals his conviction and sentence. He contends that the district court should have suppressed the evidence seized from his backpack and house and Z's pretrial identification, that the district court erred by applying a two level enhancement for committing a sexual act or sexual contact with the minor, and that his supervised

-4-

release special conditions 4 and 14 are overbroad and violate his First Amendment rights.

Boston argues that the court erred by denying his motion to suppress evidence seized during his April 10, 2005 arrest. He claims Officer Ihde's testimony that he was masturbating instead of urinating was not credible and could not support the district court's finding that Ihde had probable cause to arrest him. Boston concedes that Ihde could have arrested him under Iowa Code § 7-909[2] if he had been masturbating, but he asserts that the statute requires a sexual motive and would not authorize an arrest for urinating and that there is no equivalent statute prohibiting public urination.[3] Boston contends that because Ihde was on a bike wearing headphones and some trees were in his line of sight, he would not have been able to tell whether Boston was masturbating or urinating. The government responds that the district court's decision to credit Ihde's testimony that Boston was masturbating is virtually unreviewable on appeal and that the arrest was valid as a matter of law.

On an appeal from an order denying a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Black Bear, 422 F.3d 658, 661 (8th Cir. 2005). Ihde testified at the suppression hearing that he perceived that Boston was masturbating and this led to his decision to arrest him. In denying the motion the district court stated that it believed the facts were as Ihde testified, a determination that is "virtually unreviewable on appeal." United States v. Hernandez, 281 F.3d 746, 748 (8th Cir. 2001) (internal quotation

---

[2]"A person who exposes the person's genitals . . . or who commits a sex act in the presence of or view of a third person, commits a serious misdemeanor, if the person does so to arouse or satisfy the sexual desires of either party and the person knows or reasonably should know that the act is offensive to the viewer."

[3] A Des Moines city ordinance does provide that "no person shall expose [his penis] to another in any public place . . . ." Des Moines Municipal Code § 70-181; § 86-27(g) (violation is arrestable offense).

omitted). The district court found it implausible that "one urinating would keep walking forward as he urinates." We conclude that the district court did not err in finding that Boston was masturbating, that Ihde had probable cause to believe he was violating Iowa Code § 7-909, and that Ihde's arrest was valid. Iowa Code § 804.7 (peace officer may arrest without warrant where a public offense is committed in his presence); Iowa Code § 701.2 ("public offense" is prohibited by statute and punishable by fine or imprisonment). Boston's statements to Ihde that he had a knife and naughty pictures of children in his backpack were not extracted by threats, violence, or promises and were voluntarily made. See United States v. Gipp, 147 F.3d 680, 683 (8th Cir. 1998). For these reasons Ihde had probable cause both to search Boston and to search his backpack incident to his arrest. United States v. Oakley, 153 F.3d 696, 698 (8th Cir. 1998). The district court did not err in denying Boston's motion to suppress the evidence seized incident to his arrest.

Boston also challenges the warrant to search his home. The government argues that this issue is moot because the court dismissed the counts charging receipt and possession of child pornography, which were based on evidence discovered in his residence. We conclude that the issue is not moot because the evidence may have been considered in imposing the special conditions of supervised release about which Boston complains. Boston argues that there was not probable cause to support the search warrant because Ihde's testimony that he was masturbating was mistaken and the contents of his backpack were discovered after an invalid arrest. If the application for the warrant had included his statement that he was urinating as it should have, no warrant would have issued he argues.

The requirements for a search warrant are well established. Probable cause exists "when an affidavit [or testimony] in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability contraband or evidence of' criminal activity will be found in the particular place to be searched." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007) (internal quotations omitted). We have already

concluded that the district court's finding that Boston was masturbating was not clear error, that Ihde made a valid arrest, and that the results of the search incident to that arrest were admissible. We conclude there was sufficient evidence to establish probable cause for a search warrant for Boston's residence. Boston fails to show how inclusion in the warrant of his statement that he had been urinating would have affected the determination of probable cause given the other evidence.

Boston argues that Z's pretrial identification of him should have been suppressed because two of the six persons included in the photographic lineup were significantly younger than Boston, his photograph was placed first, and because Detective Penland's extensive involvement in the investigation created an "opportunity for suggestive verbal and non-verbal cues to the witness" during the lineup process. The government responds that the six photographs resembled each other and that neither the lineup nor the administration of the identification was impermissibly suggestive. The admission of a pretrial identification is reviewed de novo using a two part test. United States v. Donelson, 450 F.3d 768, 772 (8th Cir. 2006). The threshold issue is whether appellant has shown that the identification procedures were "impermissibly suggestive." Id. (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). If such a showing is made, we examine the totality of the circumstances to determine whether they created a "very substantial likelihood of irreparable misidentification." Id. at 773.

The photographic lineup presented to Z contained pictures of six individuals with similar physical characteristics and no other identifying information. Id. (citing Manson v. Brathwaite, 432 U.S. 98, 117 (1977)). Z was instructed to look at all of the photos before identifying one, and the order in which the photos were placed was random. There was no evidence that Penland made any suggestive sounds or gestures during the photographic lineup, and there is no requirement that such lineups be administered by officers who are independent from the investigation. Before viewing the lineup, Z described the perpetrator as a white male and described his camera and

car in terms that matched Boston's camera and car. The district court did not err in denying Boston's motion to suppress the pretrial identification.

Boston argues that the district court erred when it enhanced his advisory guideline range by two levels for an offense involving a sexual act or sexual contact. Boston claims the government failed to prove by a preponderance of the evidence that his contact with Z met the definition of "sexual act" or "sexual contact" under 18 U.S.C. § 2246.[4] The government argues that Z's emotional description of being touched by Boston in "sick places" coupled with the Polaroid pictures showing Z's exposed penis constituted sufficient evidence that Boston had touched his penis. We review a district court's factual findings for clear error. United States v. Francis, 462 F.3d 810, 814 (8th Cir. 2006). The district court stated at sentencing that it would have liked to have had direct trial testimony from Z that Boston had touched him, but after reviewing the record it found that a preponderance of the evidence led to its finding that Boston had made sexual contact with Z by touching his private parts with his hand. Considering the circumstances as described by Z, it was logical to infer that Boston had touched Z's penis for sexual pleasure after convincing him to take his pants off for pictures. Based upon this record we conclude that the district court did not err in imposing an enhancement under U.S.S.G. § 2G2.1(b)(2)(A).

Boston appeals the constitutionality of two of the eighteen special conditions imposed on his supervised release. Special condition 4 prohibits Boston from viewing, possessing, or entering any location that sells any form of pornography, sexually stimulating, or sexually oriented material as deemed inappropriate by his

---

[4] "Sexual act" means "the intentional touching, not through the clothing, of the genetalia of another person who has not attained the age of 16 years with an intent to . . . arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). "Sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, . . . or buttocks of any person with an intent to . . . arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

probation officer and/or treatment staff.  Special condition 14 prohibits Boston from accessing or possessing a computer without prior approval of his probation officer. He argues here, as he did at his sentencing hearing, that these special conditions violate 18 U.S.C. § 3583(d)(2) because they amount to a greater deprivation of liberty than is reasonably necessary to achieve their purposes.  The government argues these terms are reasonable and rationally related to his offense.

We review the district court's imposition of the terms and conditions of supervised release for an abuse of discretion.  United States v. Heidebur, 417 F.3d 1002, 1004 (8th Cir. 2005).  The district court is afforded wide discretion in imposing conditions on a defendant's supervised release so long as they meet the requirements of 18 U.S.C. § 3583(d).  See United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006).

Under § 3583(d), each condition must be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs.  18 U.S.C. § 3583(d)(1).  Furthermore, the condition may not result in any "greater deprivation of liberty than is reasonably necessary" for the purposes of deterring criminal conduct, protecting the public from the defendant, and treating the defendant's correctional needs.  18 U.S.C. § 3583(d)(2).  Finally, each condition must be consistent with pertinent Sentencing Commission policy statements. 18 U.S.C. § 3583(d)(3).

Special condition 4 provides that Boston

shall not view or possess any form of pornography, sexually stimulating or sexually oriented material including books, videos, magazines, cut-outs or pornography of any kind as deemed inappropriate by the probation officer and/or treatment staff.    You

-9-

shall not enter any location where pornography or erotica are the primary products for purchase or viewing. You shall not enter any location where the primary function is to provide adult entertainment.

He argued at his sentencing hearing that this restriction was overbroad and an unconstitutional restriction of his right of association because it includes a prohibition on sexually explicit material involving adults while his criminal history includes only sexual offenses involving minors. He urged the court to limit the restriction to "pornography involving children." Given Boston's history of sexual offenses and the desire to deter him from this conduct in the future, the condition in prohibiting his access to sexually explicit material involving adults is not overly broad.

Under special condition 14, Boston "shall not have access to or possess a computer at home or elsewhere without the prior written approval of the U.S. Probation Officer." A restriction on computer usage does not constitute an abuse of discretion if the district court has found that the defendant used his computer to do more than merely possess child pornography, particularly if the prohibition on computer usage is not absolute. See United States v. Ristine, 335 F.3d 692, 696 (8th Cir. 2003). Such findings may be based on any information other than materially false information. See United States v. Sandifer, 188 F.3d 992, 994 (8th Cir. 1999). The special condition here, prohibiting Boston from accessing or possessing a computer without written approval of his probation officer, did not constitute an abuse of discretion because it was not absolute and because evidence was presented at the suppression hearing that Boston had used a computer to print out images of child pornography which could easily have been done for the purpose of transferring them to others. See Ristine, 335 F.3d at 696.

For these reasons we affirm the judgment of the district court.

_____