**UNITED STATES of America,
Plaintiff,**

v.

**Jasper J. PENEAUX, Jr., and
Christopher R. Prue,
Defendants.**

**CR. No. 07–30061–KES.**

United States District Court,
D. South Dakota,
Central Division.

Feb. 11, 2008.

See, also, 2007 WL 3274385.

Randolph J. Seiler, Jeremy R. Jehangiri, Assistant United States Attorneys, Pierre, SD, for Plaintiff.

Jana M. Miner, First Assistant Federal Public Defender, David W. Siebrasse, Siebrasse Law Office, P.C., Pierre, SD, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATIONS

KAREN E. SCHREIER, Chief Judge.

Defendants, Jasper Peneaux Jr., and Christopher R. Prue, are charged in a four-count indictment which alleges aggravated sexual abuse and robbery. Defendants move to suppress evidence of photo identifications of each defendant by the alleged victim, arguing that the photo line-up procedure violated their right to due process. Additionally, Peneaux moves for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), arguing that a search warrant for the search of his person was issued based upon an improper affidavit.

Magistrate Judge Mark A. Moreno conducted an evidentiary hearing with regard to the motions to suppress. At the conclusion of the evidentiary hearing, the magistrate judge denied Peneaux's motion for a *Franks* hearing and supplemented his oral order with a written report and recommendation. Docket 70. The magistrate judge also issued a report and recommendation recommending that this court deny defendants' motion to suppress the photo identifications. Docket 72. Defendants object to the reports and recommendations of the magistrate judge. Dockets 76, 79.

### STANDARD OF REVIEW

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Lothridge*, 324 F.3d 599 (8th Cir.2003); *Jones v. Pillow*, 47 F.3d 251, 253 (8th Cir.1995). 28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see also* Fed.R.Civ.P. 72(b). After a careful de novo review of the magistrate judge's findings and recommendations and a review of the record, the court accepts the findings and recommendations of the magistrate judge as supplemented herein.

## FACTUAL BACKGROUND

All four counts in the indictment stem from events that are alleged to have occurred on November 18, 2006. It is alleged that on that date, defendants were in attendance at a party at the home of the alleged victim on the Rosebud Indian Reservation. At that party it is alleged that defendants sexually assaulted Ms. Oskolkoff, and then took her cell phone and money by force, violence, and intimidation.

The Rosebud Police Department first became involved in investigating the above described incident when it received a call concerning a possible rape at approximately 6:18 a.m. on November 18, 2006. Officers responded to the address given by the caller and discovered the alleged victim in an emotional state. A sexual assault kit was performed on the alleged victim and evidence was collected from her home. The alleged victim did not give a description of her alleged assailants.

Sometime on November 18, 2006, the alleged victim's mother called the stolen cell phone and talked to a female later identified as T. White Lance. The following day the phone was recovered from White Lance, who stated that she had received the phone from Peneaux, her boyfriend.[1]

On November 19, 2006, a photo lineup was arranged by Rosebud Sergeant Mark Kettell. At the suppression hearing, Kettell testified that the lineup consisted of photos of persons he had determined were present at the alleged victim's party and which were already contained within the police department's database. Docket 73 at 75–80. The lineup contained a photo of Peneaux but did not contain a photo of Prue. *Id.* When shown the photo array, the alleged victim immediately identified Peneaux as one of her assailants and indicated that she was "sure" of her identification. *Id.* at 112–13.

Subsequent to Peneaux's arrest, the police investigation also led tribal authorities to believe that Prue was with Peneaux when the alleged rape occurred. He therefore became a suspect. On November 22, 2006, a second photo lineup was prepared by Special Agent Barrera containing Prue's photograph. Special Agent Barrera prepared the lineup by retrieving seven other pictures in the police database of persons that had physical characteristics similar to Prue. *Id.* at 152. Upon viewing the lineup, the alleged victim immediately identified Prue as the second assailant. *Id.* at 156.

1. There is some confusion in the record regarding the identity of White Lance's boyfriend. In the affidavit made in support of the search warrant, Special Agent Christiaan Barrera averred that White Lance received the phone from Prue, her boyfriend. At the suppression hearing, however, the government asserted that this was an "innocent mistake" made by Special Agent Barrera, that he transposed the defendants' names, and that Peneaux was White Lance's boyfriend. Docket 73 at 221. A review of the record does not indicate with certainty who White Lance received the cell phone from, nor with whom White Lance was romantically involved. Nonetheless, the court does not find these details are material to these proceedings, as it is clear that White Lance received the alleged victim's cell phone from one of the defendants and in turn, one of the defendants, as well as White Lance, indicated that the defendants were together the night of November 18, 2006.

On November 28, 2006, Special Agent Barrera prepared an affidavit in support of his request for a search warrant of Jasper Peneaux and Christopher Prue. In the affidavit, Barrera averred that he had been employed since February 23, 1993, and he had been employed for thirteen years. Barrera also averred that although no description of the alleged assailants was obtained from the victim at her home on November 18, 2006, the victim's mother had "talked [to] a female who stated she got the phone from Christopher Prue." Further, the affidavit averred:

> On November 19, 2006 the victim recovered her cellular phone from a female with the last name of White Lance, first name started with a T. The female states that she got the telephone from Christopher Prue her boyfriend. The victim was shown a photo line up by Sgt. Mark Kettell and she picked out Jasper Peneaux as one of the assailants. Mr. Peneaux and Ms. White Lance said he (Peneaux) was with Christopher Prue. On the same date the victim picks Mr. [P]rue out of [the] photo line up provided by me.

Based upon Special Agent Barrera's affidavit, Tribal Judge Janel Sully issued warrants to obtain a biological sample from each defendant.

## I. Suppression of Identification Evidence

■ The magistrate judge determined that the admission of the identification evidence did not violate defendants' rights to due process pursuant to the two-step inquiry set forth by the Supreme Court. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

"The first step is to determine whether the array was impermissibly suggestive. If found so, the second inquiry is whether under the totality of the circumstances the array created a substantial risk of misidentification at trial." *Schawitsch v. Burt,* 491 F.3d 798, 802 (8th Cir.2007). The magistrate judge found that defendants had not demonstrated that the photo array was presented in an impermissibly suggestive manner, and in the alternative that under the totality of the circumstances, the array did not create a substantial risk of misidentification at trial. Docket 72 at 3–6.

The court has conducted a de novo review of the report and recommendations issued by Magistrate Judge Moreno, pursuant to Rule 28 U.S.C. § 636(b)(1). Defendants argue that under the second step of the *Schawitsch* analysis, the lack of evidence regarding the lighting during the alleged rape and the alleged victim's level of intoxication create a substantial risk of misidentification. Nonetheless, the defendant was able to quickly and decisively select each defendant from the photo arrays displayed to her, and under the totality of the circumstances the court finds that there is not a substantial risk of misidentification. Defendants will have an opportunity to cross-examine the alleged victim regarding her ability to perceive and recall the identity of her alleged assailants at trial. After reviewing the facts and the law as it relates to this case, as well as the objections made by defendants, the court adopts the report and recommendation issued by Magistrate Judge Moreno with respect to the suppression of the photo identifications in its entirety. Accordingly, defendants' motions to suppress are denied.[2]

2. Peneaux objects to the statement in the report and recommendation that the alleged victim "was part of and (unfortunately) intimately involved in, the alleged rapes," asserting that it is a finding by the magistrate judge that the rapes did occur. Docket 79 at 5. The court does not find that the statement regarding the "alleged rapes" amounts to a finding that the rapes actually occurred.

## II. *Franks* Hearing

■ Peneaux also objects to the report and recommendation of the magistrate judge that recommends this court deny his motion for a *Franks* hearing to challenge the validity of the search warrant issued by Judge Sully. Peneaux argues that the affidavit submitted by Special Agent Christian Barrera in support of his application for a search warrant was defective, and therefore insufficient to support the probable cause determination made by Judge Sully when she issued the warrant.

Where an issuing judge's probable cause determination was premised on an affidavit containing false or omitted statements, the resulting search warrant may be invalid if the defendant can prove by a preponderance of the evidence (1) that the police omitted facts with the intent to make, or in reckless disregard of whether they were made, the affidavit misleading ... and (2) that the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause.

*United States v. Williams,* 477 F.3d 554, 557 (8th Cir.2007) (internal quotations omitted).

A defendant is entitled to a hearing to challenge the veracity of a statement used to secure a search warrant when "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674.

The magistrate judge discussed the grounds based upon which Peneaux asserted that there existed either deliberate falsehoods or misstatements in the affidavit upon which the search warrant was granted. The magistrate judge correctly rejected Peneaux's proffered arguments, none of which demonstrate that Special Agent Barrera included false statements in the affidavit knowingly and intentionally or with reckless disregard for the truth. The court therefore adopts the report and recommendation of the magistrate judge.

Even if this court were to assume that Peneaux made a "substantial preliminary showing" that Special Agent Barrera improperly prepared the affidavit, the second prong of the *Franks* test is not met. The affidavit states that Peneaux was picked out of a photo lineup by the alleged victim. As discussed above, this court finds that the lineup was not conducted in violation of Peneaux's due process rights. Therefore, that allegation alone would be sufficient for Judge Scully to find probable cause to authorize a search warrant of Peneaux's person. Further, the affidavit avers that the alleged victim's cell phone was recovered from one of the defendants and that one of the defendants indicated both defendants were together the night of November 16, 2006. This second piece of evidence further bolsters the ability of Judge Scully to find probable cause. Because any alleged false statements were not necessary to the finding of probable cause by the issuing judge, Peneaux is not entitled to a *Franks* hearing on that independent basis as well.

Based on the foregoing, it is hereby

ORDERED that the court adopts the report and recommendation of the magistrate judge to deny defendants' motions to suppress, as supplemented herein, and defendants' motions (Dockets 33 & 42) are therefore DENIED.

IT IS FURTHER ORDERED that the court adopts the report and recommendation of the magistrate judge to deny Peneaux's motion for a *Franks* hearing, as supplemented herein, and Peneaux's motion (Docket 25) is DENIED.

## 2008 DSD 4

REPORT AND RECOMMENDATION CONCERNING MOTIONS TO SUPPRESS PHOTO IDENTIFICATIONS

MARK A. MORENO, United States Magistrate Judge.

[¶ 1] Defendants, Jasper J. Peneaux, Jr. and Christopher R. Prue (referred to herein by name or collectively as "Defendants"), have filed Motions to Suppress Evidence of Photo Lineups conducted at the Rosebud Police Department on November 19 and 22, 2006. Docket Nos. 33, 42. Plaintiff, United States of America (hereinafter "Government"), has filed written Responses to both Motions, resisting the same. Docket Nos. 37, 44. On January 3–4, 2008, a hearing was held on the Motions at which four witnesses testified and two exhibits were received into evidence. Because the Motions are dispositive ones, this Court is only authorized to determine the same on a report and recommendation basis. *See* 28 U.S.C. § 636(b)(1). After careful review of the evidence and testimony presented, and based on the credibility of the witnesses who testified, the Court does now make and propose the following report and recommendation for disposition of the Motions.

### I.

[¶ 2] Sometime after 6:00 a.m. on November 18, 2006, the Rosebud Police Department received a call concerning a possible rape that had occurred. Tribal officers responded to the call, collected evidence at the scene, interviewed the alleged victim, Alexis M. Oskolkoff, and saw to it that a rape kit was performed on her.

[¶ 3] On November 19, 2006, Sergeant Mark Kettell, of the Rosebud Police Department, assembled a photographic lineup of the people who were at Oskolkoff's residence the night before and showed it to her. Oskolkoff identified Peneaux right away as one of her attackers.

[¶ 4] On November 22, 2006, Christian Barrera, a supervisory criminal investigator for the Rosebud Police Department at the time, prepared a second photographic lineup, made up of different persons, and showed it to Oskolkoff. She looked at the lineup and identified Prue as her other attacker in less than five seconds.

[¶ 5] Ultimately, Defendants were charged in federal court by Indictment with three counts of forcible rape, one count of robbery and, in the alternative, with aiding and abetting each other in the commission of these crimes. They later each filed motions to suppress evidence of their photographic identifications. They claim that their lineups were impermissibly suggestive and gave rise to a substantial likelihood of irreparable misidentification.

### II.

[¶ 6] Photographic identifications or "arrays" are reviewed using a two-step inquiry. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Schawitsch v. Burt*, 491 F.3d 798, 802 (8th Cir.2007). The first step is to determine whether the lineup or array was "impermissibly suggestive." *United States v. Donelson*, 450 F.3d 768, 772 (8th Cir.) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)), *cert denied*, —— U.S. ——, 127 S.Ct. 451, 166 L.Ed.2d 320 (2006). If such a finding is made, the second step is to determine whether, under the totality of the circumstances, the lineup or array created a "very substantial likelihood of irreparable misidentification." *Id.* at 773.

[¶ 7] When there are no differences in appearance which tend to isolate the defendant's photograph, the identification

procedure is not unnecessarily suggestive. *United States v. Mays,* 822 F.2d 793, 798 (8th Cir.1987); *see also United States v. Wilson,* 787 F.2d 375, 385 (8th Cir.) (photo spread not unnecessarily suggestive where suspect was the only Hispanic included in the display), *cert denied,* 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986).

[¶ 8] The determination as to whether a photographic lineup or array creates a substantial risk of misidentification at trial, requires a court to consider: (1) the opportunity of the witness to view the defendant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated at the time of the identification; and (5) the time between the crime and the identification. *United States v. Williams,* 340 F.3d 563, 567 (8th Cir.2003) (citing *Manson,* 432 U.S. at 114, 97 S.Ct. 2243).

### III.

[¶ 9] Peneaux's picture was one among five photographs shown to Oskolkoff on November 19th. The individuals depicted in the lineup had allegedly been at Oskolkoff's residence the previous night. Each photograph in the lineup was presented in the same manner, without any marks or identifying information showing. While Peneaux's shirt and hair length may have been different than the rest, the basic features of each of the others were consistent with and generally similar to Peneaux's own features. The Court does not believe that the lineup was itself unduly or impermissibly suggestive.[1] *United States v. Boston,* 494 F.3d 660, 666 (8th Cir.2007); *United States v. Rose,* 362 F.3d 1059, 1066 (8th Cir.2004).

[¶ 10] The same is true of the November 22nd photographic lineup shown to Oskolkoff. The eight photographs depicted individuals in white shirts who all resembled each other. Moreover, neither the lineup nor the identification process itself was impermissibly suggestive.[2] *Id.*

### IV.

[¶ 11] In any event, even assuming, *arguendo,* that the photographic lineups were impermissibly suggestive, Defendants have failed to demonstrate a substantial likelihood of irreparable misidentification. First and foremost, Oskolkoff had ample time and opportunities to view both Defendants. While one Defendant is alleged to have forcibly held Oskolkoff down, the other Defendant is alleged to have raped her. Supposedly, Defendants then switched places so that both them, in the end, were able to have sexual intercourse with her. Oskolkoff thus had a close-up, face-to-face opportunity to see each Defendant. Although Oskolkoff was not able to name either Defendant, she was able to identify them, from the photo-

---

1. The Court does so despite the fact that only five, rather than six or more, photographs were displayed. *See State v. Swoopes,* 223 Neb. 914, 918, 395 N.W.2d 500, 504 (1986) ("an array of five photographs is sufficient to constitute a fair and adequate array when attempting to identify a single perpetrator."); *see also Farrell v. State,* 622 N.E.2d 488, 494 (Ind.1993) (though the court has recommended five-six photos in past, use of three upheld here, where police were "unable to find more than two other individuals sufficiently resembling the defendant"); *Nave v. State,* 808 P.2d 991, 993 (Okla.Crim.App. 1991) ("no case * * * states that three, four or five photos are per se impermissibly suggestive").

2. The fact that Prue's photograph had been compacted and was smaller than the others did not make the lineup overly suggestive so that Prue stood out and was more likely to be selected. And, the fact that each of the photos had "ID–Number[s]" underneath them is of no consequence because Oskolkoff would not have been able to attach any significance to the "Number[s]."

graphic lineups shown to her, almost immediately.

[¶ 12] As to Oskolkoff's degree of attention, she is alleged to have been forcibly raped, which means that she was focused on and devoted to resisting Defendant's sexual advances. Unlike some eye witnesses, Oskolkoff was not a casual observer, but rather, was part of and (unfortunately) intimately involved in, the alleged rapes as they were being committed. While admittedly Oskolkoff's description of her attackers was by no means detailed, she was certain in her identifications of Defendants and shown the photographic lineups, just one and four days, respectively, after the alleged rape incident occurred. There is no evidence that Waln or Barrera said or did anything to influence Oskolkoff's choices and there is no requirement that such lineups be administered by officers who are independent from the investigation. *Boston*, 494 F.3d at 666; *Schawitsch*, 491 F.3d at 803; *Donelson*, 450 F.3d at 773.

### V.

[¶ 13] On this record, the Court is unable to conclude that the photographic lineups that were presented to Oskolkoff on November 19th and 22nd, from which she identified both Defendants, were "impermissibly suggestive" and created a "substantial likelihood of irreparable misidentification" so as to offend due process strictures. Accordingly, the Court hereby

[¶ 14] RECOMMENDS that Peneaux's Supplemental Motion to Suppress Evidence of Photo Identification, found at Docket No. 37, and Prue's Motion to Suppress Evidence of Photo Identification, filed at Docket No. 42, be denied.

Dated this 22nd day of January, 2008, at Pierre, South Dakota.

UNITED STATES OF AMERICA, Plaintiff

-vs-

JASPER J. PENEAUX, JR., Defendant.

CR. 07–30061(01)

2008 DSD 3

REPORT AND RECOMMENDATION FOR DISPOSITION OF DEFENDANT'S MOTION FOR FRANKS HEARING AND SUPPRESSION OF EVIDENCE

MARK A. MORENO, United States Magistrate Judge.

[¶ 1] Defendant, Jasper J. Peneaux, Jr., has filed a Motion for Franks Hearing and Suppression of Evidence and supporting Memorandum, Docket Nos. 25, 26. In his Motion, Defendant claims that a tribal search warrant was issued based on an affidavit containing false or omitted statements, thereby making the warrant invalid and the evidence or "fruits" obtained therefrom, illegal. Plaintiff, United States of America (Government), has filed a Response to the Motion, resisting the same. Docket No. 30. Because Defendant's Motion is a dispositive one, this Court is only authorized to determine the same on a report and recommendation basis. Pursuant to 28 U.S.C. § 636(b)(1), the Court does now make and propose the following report and recommendation for disposition of the Motion.

### I.

[¶ 2] On November 28, 2006, Special Agent Christian Barrera of the Rosebud Sioux Tribe, submitted an affidavit in support of a search warrant to Tribal Judge Janel Y. Sully. The search warrant requested authorization to conduct a "search of" Defendant and co-Defendant, Christopher R. Prue.

[¶ 3] In his affidavit, Barrera averred that on November 18, 2006, at approxi-

mately 6:18 a.m., the Rosebud Police Department received a call concerning a possible rape that had occurred. Officers from the Police Department and Barrera responded to the call. At the scene, evidence was collected and a sexual assault kit performed on the alleged victim.

[¶ 4] Thereafter, Angel Cloudman, the alleged victim's mother, called the latter's cell phone and talked to a female who indicated that she obtained the phone from Prue. The next day, the alleged victim recovered her phone from a female with the last name of White Lance. White Lance stated that her boyfriend, Prue, gave her the phone.

[¶ 5] That same day, November 19, 2006, the alleged victim was shown a photo lineup by Sergeant Mark Kettell, a tribal police officer. The alleged victim identified Defendant from the lineup as one of her attackers. According to Barrera, White Lance and Defendant stated that Defendant and Prue were together. The alleged victim also identified Prue as her other attacker from a photo lineup prepared by Barrera.

[¶ 6] Based on Barrera's affidavit, Judge Sully issued search warrants, on November 28, 2006, authorizing tribal officers to obtain "biological sample[s]" from Defendant and Prue. The warrants were then executed later in the day and biological samples taken from individuals.

[¶ 7] On July 25, 2007, a four-count Indictment was filed against Defendant and Prue charging them with three counts of forcible rape, one count of robbery and aiding and abetting each other in the commission of such crimes. Following the filing of Defendant's Motion and the Government's Response thereto, the Court held a hearing on other defense motions and at the conclusion of the same, determined that Defendant was not entitled to a *Franks* hearing. In doing so, the Court made an oral ruling on the *Franks* issue

from the bench and indicated that it may supplement its ruling in writing later on. This Report and Recommendation is intended to augment and more fully address Defendant's Motion and the claims raised by him for the first time at the hearing.

## II.

[¶ 8] Before a search warrant may be issued, the Fourth Amendment requires a showing of probable cause based on the "totality of the circumstances." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir.2007). The task of the issuing judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Williams*, 477 F.3d at 557 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see also United States v. Davis*, 471 F.3d 938, 946 (8th Cir.2006). Where the probable cause determination is premised on an affidavit containing false or omitted statements, the resulting search warrant may be invalid if the defendant can establish, by a preponderance of the evidence "(1) that the [affiant] omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading . . . and (2) that the affidavit, if supplemented by the omitted information[,] would not have been sufficient to support a finding of probable cause." *Williams*, 477 F.3d at 557 (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986)): *see also United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir.), *cert. denied*, 534 U.S. 896, 122 S.Ct. 218, 151 L.Ed.2d 155 (2001).

[¶ 9] To be entitled to a *Franks* hearing, a defendant must make a "substantial preliminary showing" that includes:

Allegations of deliberate falsehood or of reckless disregard for the truth[.] [T]hose allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or the absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted ... is only that of the affiant, not of any non-governmental informant.

*Williams,* 477 F.3d at 557 (quoting *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)); *see also United States v. Snyder,* No. 07–1298, 2008 WL 60181 at *2 (8th Cir. Jan. 7, 2008). "While clear proof of these elements is not required at the stage at which the defendant is demonstrating an entitlement to an evidentiary hearing, the defendant must make a 'substantial preliminary showing' comprised of specific allegations along with supporting affidavits or similarly reliable statements." *Williams,* 477 F.3d at 557–58; *see also Franks,* 438 U.S. at 171, 98 S.Ct. 2674 (describing what must be shown for allegedly false statements in warrant affidavits). Inasmuch as there is a "presumption of validity with respect to the affidavit supporting the search warrant, to be entitled to a *Franks* hearing, the defendant's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Williams,* 477 F.3d at 558. And, "[t]he substantiality requirement is not lightly met." *Williams,* 477 F.3d at 558 (citing *United States v. Wajda,* 810 F.2d 754, 759 (8th Cir.), *cert. denied,* 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987)): *see also United States v. Gabrio,* 295 F.3d 880, 883 (8th Cir.), *cert. denied,* 537 U.S. 962, 123

S.Ct. 390, 154 L.Ed.2d 317 (2002). Indeed, a finding by a reviewing court that the affiant "may" have included or omitted information from the search warrant affidavit with reckless disregard for the truth is legally insufficient to justify a *Franks* hearing absent a determination that the included or omitted information may, in turn, have rendered the affidavit misleading and/or otherwise made the probable cause finding unsupportable. *See Williams,* 477 F.3d at 558.

### III.

[¶ 10] Defendant's Motion and accompanying Memorandum failed to specifically identify any falsehoods or misstatements. In addition, Defendant has failed to submit affidavits or similarly reliable statements to support his claims. Defendant did, however, make several later-in-time proffers at the end of the motion hearing in an effort to show that Barrera deliberately, or with reckless disregard for the truth, misstated or omitted material facts from his affidavit. The Court will address each of Defendant's contentions in turn.

### A.

▉ [¶ 11] Defendant's first contention is that the affidavit erroneously states that Prue was White Lance's boyfriend. According to Defendant, this statement is false and, at the very least, shows that Barrera was reckless in preparing his affidavit. Yet whether Prue was White Lance's boyfriend or not is of little significance. The important fact, in the affidavit, is White Lance's statement that Prue gave her the alleged victim's cell phone and the obvious inference therefrom, namely, that Prue was with the alleged victim and took her phone the night she was supposedly raped.

## B.

[¶ 12] Second, Defendant contends that Barrera's failure to mention the name of the alleged victim, state where the alleged rape took place and that Indians and/or tribal members were involved, amounted to material omissions that tainted Judge Sully's finding of probable cause. The fact that the name of the alleged victim was left out of the affidavit, however, is not fatal. Although the jurisdictional allegations in the affidavit are quite thin, the Court assumes that Judge Sully, a tribal judge and resident of the Rosebud Indian Reservation, is familiar with tribal members and would have known whether Defendant and Prue, both of whom had been in the Rosebud Tribe's criminal justice system, were Indians and tribal members at the time she reviewed Barrera's search warrant affidavit. In addition, an inference certainly can be drawn that because the alleged rape was reported to the Rosebud Police Department, the same most likely had occurred within the exterior boundaries of the Rosebud Reservation.

## C.

[¶ 13] Defendant next challenges the veracity of Barrera's statement that Defendant and White Lance both said that Defendant "was with" Prue. Defendant, however, offers no evidentiary support in his proffer to counteract the validity of this statement. Defendant's proffer alone is insufficient. Regardless, the fact that the alleged victim identified Defendant and Prue as her assailants from separate photo lineups, is powerful evidence that weighed heavily in the probable cause inquiry.

## D.

[¶ 14] Fourth, Defendant further cavils the affidavit on hearsay and reliability grounds. Specifically, he claims that the affidavit contains hearsay and is unreliable. He points to a statement made by Cloudman, which he says is triple hearsay,

as an example of this. It is a well-established rule, however, that hearsay may be used to support the issuance of a warrant so long as there is a substantial basis for crediting the hearsay. *See United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Here, the alleged victim and Cloudman supplied Barrera with corroborated information concerning the identity of Defendant and Prue through the statements and conduct of White Lance and Prue. The statements and actions of these individuals all occurred within a close temporal proximity to the time of the alleged rape.

## E.

[¶ 15] Fifth, Defendant maintains that Barrera misled Judge Sully about his years of experience. In that regard, he alleges that Barrera had not been continuously employed as a police officer for 13 years at the time he executed his affidavit. Barrera testified at the motion hearing that he did not work, for a period of time, as a police officer after 9–11 (i.e. after September 11, 2001). Even so, whether Barrera had 13 years of police experience, as he represented in his affidavit, or 11 years, as he testified to at the motion hearing, is of little consequence and, more importantly, does not alter the probable cause finding or require a *Franks* hearing.

## F.

[¶ 16] Finally, Defendant assails the search warrant itself because it authorized police officers to obtain a "biological sample" which Barrera did not request in his affidavit. According to Defendant, since the affidavit only requested the "search of [Defendant] and [ ] Prue," a search warrant could not be issued for a "biological sample." Nonetheless, as was previously observed, the existence of probable cause is based on the totality of the

circumstances and, rather than reviewing the issuance of a warrant in a hyper-technical fashion, courts employ a common-sense approach. *See United States v. Carter*, 413 F.3d 712, 714 (8th Cir.2005). Defendant and Prue were both identified by the alleged victim as her attackers. As part of the investigation, tribal officers at the scene performed a rape kit on the alleged victim and collected bodily fluids from her that presumably would have been left behind by her assailants. A search of Defendant and Prue's persons, which Barrera asked permission to do, would include, among other things, obtaining biological samples from them.

## IV.

[¶ 17] Upon review and reconsideration of the matter, the Court concludes that Defendant has failed to make a "substantial preliminary showing" sufficient to justify a *Franks* hearing. The facts allegedly misstated or omitted were either not misleading, because they could have been known to or assumed by Judge Sully, or would otherwise not have materially affected the probable cause determination.

[¶ 18] Accordingly, it is hereby

[¶ 19] RECOMMENDED that Defendant's Motion for a Franks Hearing and to Suppress Evidence obtained from an allegedly invalid warrant, Docket No. 25, be denied in all respects.

Dated this 11th day of January, 2008, at Pierre, South Dakota.