# United States Court of Appeals
## For the First Circuit

No. 07-1511

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ ANGEL PERAZZA-MERCADO,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

José L. Barreto-Rampolla, with whom Rivera, Barreto & Torres
Marcano was on brief, for appellant.
Mariana E. Bauzá-Almonte, Assistant United States Attorney,
with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, Chief
Appellate Division, were on brief, for appellee.

January 21, 2009

**LIPEZ, Circuit Judge**. This case requires us to address the validity of two conditions of supervised release imposed on a defendant convicted of unlawful sexual contact with a minor. The first condition prohibited the defendant from having any access to the internet at home during the fifteen-year supervised release period. The second condition prohibited the possession of pornography generally.

## I.

Pursuant to a plea agreement, appellant José A. Perazza-Mercado pled guilty to one count of knowingly engaging in sexual contact with a female under the age of twelve. The district court levied a $7,500 fine and sentenced him to forty-six months of incarceration, to be followed by fifteen years of supervised release. As special conditions of supervised release, the court imposed the total ban on appellant's use of the internet at his home and the prohibition on the possession of pornography of any kind.

As he did before the sentencing court, Perazza-Mercado challenges the restriction on his internet use on the grounds that it is not reasonably related to his offense and involves a greater deprivation of his liberty than is reasonably necessary. We agree with appellant that, under the circumstances of this case, the district court's imposition of a total ban on home internet use was an abuse of discretion. On remand, the district court should

-2-

consider a narrower restriction on internet use, now feasible in light of technological developments.

Perazza-Mercado also challenges, for the first time on appeal, the condition forbidding the possession of pornography. He relies on the alleged vagueness of the district court's reference to pornography and the absence of a relationship between his offense and pornographic materials. We conclude that the district court committed plain error by failing to offer any explanation for the total ban on pornography, in the absence of a record containing any evidence regarding appellant's use of pornography, its involvement in the offense at issue, or its relationship to the likelihood of recidivism. On remand, the district court may reconsider the appropriateness of a ban on possessing pornography as a condition of supervised release. If it chooses to impose such a prohibition, it must explain the basis for doing so and the grounding of that prohibition in the record.

**II.**

**A. Background**

The following undisputed facts were stipulated as part of the plea agreement. Perazza-Mercado was an Educational Technician (ET) with the Department of Defense's Education and Administration Antilles Intermediate School at the U.S. Army Base at Fort Buchanan, Puerto Rico. In this capacity, he directly supervised two or three special needs students at a time.

While working as an ET on or about April 18, 2006, Perazza-Mercado knowingly engaged in sexual contact with a nine-year-old female in his care. Under the classroom desk, Perazza-Mercado touched the female student's genital area and took her hand to touch his own genitalia. A male student observed this incident when he dropped his pencil under the desk, and he reported the conduct to another teacher. Both students were interviewed and provided consistent narratives of the incident. In an interview with a federal agent approximately one month later, Perazza-Mercado admitted that he had engaged in the reported sexual conduct with the female student.

The parties agreed that, at sentencing, the government would recommend an offense level of nineteen,[1] which, when combined with defendant's criminal history category (I)[2], yielded a Guidelines sentencing range of thirty to thirty-seven months. Perazza-Mercado waived his right to appeal the sentence as long as he was sentenced in accordance with the terms and conditions of the

---

[1] The guidelines range was calculated as follows: a base offense level of sixteen pursuant to U.S.S.G. § 2A3.4(a)(2); a four-level increase pursuant to U.S.S.G. § 2A3.4(b)(1) because the victim was under twelve years old; a two-level increase under U.S.S.G. § 2A3.4(b)(3) because the victim was under Perazza-Mercado's care and supervision; and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a),(b).

[2] This is the category for a defendant without a criminal record.

plea agreement.[3] Pursuant to this plea agreement, Perazza-Mercado pled guilty on August 8, 2006, to knowingly engaging in sexual contact with a female under the age of twelve in violation of 18 U.S.C. § 2244(a)(1). His plea was accepted by the court.

## B. Sentencing

At the sentencing hearing on February 15, 2007, the district court relied on the recommendation in the pre-sentence report (PSR), which differed from the parties' Guidelines calculation to the extent that it recommended a two-level victim-related adjustment because the victim was a "vulnerable victim."[4] This enhancement increased the total offense level to twenty-one, which carries a guidelines sentencing range of thirty-seven to forty-six months for a defendant with no criminal history.

In addition to a description of the specific incident which led to appellant's conviction, the PSR also contained evidence of other instances of inappropriate conduct towards the victim and other minor females at the school where he worked. In interviews with the defendant's co-workers and supervisors, his probation officer learned that Perazza-Mercado had previously been

---

[3] The waiver clause states that "[t]he defendant hereby agrees that if this Honorable Court accepts this agreement and sentences him according to its terms and conditions, the defendant waives and surrenders his right to appeal the judgment in the case."

[4] If the defendant knew that the victim was a vulnerable victim, a two-level adjustment pursuant to U.S.S.G. § 3A1.1(b)(1) applies.

reprimanded for touching the victim's knee (on another occasion) and for bringing gifts to other minor female students. The interviewees also related several of Perazza-Mercado's inappropriate remarks about the victim and other female students, and described how, on several occasions, Perazza-Mercado had attempted to escort female students to the restroom, even though this was not allowed. Finally, several of his co-workers mentioned Perazza-Mercado's express preference for working with female students rather than males.[5]

The district court sentenced Perazza-Mercado to forty-six months in prison, the maximum sentence which he could have received under the guidelines.[6] The decision also provided for a $7,500 fine and a fifteen-year term of supervised release.

Perazza-Mercado's supervised release was subject to a number of mandatory conditions. See generally U.S.S.G. § 5D1.3(a). However, the court, in its discretion, also imposed a number of other conditions of supervised release, including all of the

---

[5] The record is not explicit about whether the court considered these additional incidents in determining the appropriate victim enhancement. At sentencing, however, the court stated that "[i]t is reasonable to say that the defendant knew that the victim, as well as those kids who are with her and under his supervision, were vulnerable individuals; and, therefore, a two-level increase is warranted under Guideline section 2A1.1(1)(b)(1)." (emphasis added).

[6] Because Perazza-Mercado was not sentenced in accordance with the plea agreement, the government concedes that the waiver of appeal is inapplicable.

standard conditions of supervision described in U.S.S.G. § 5D1.3(c) and several special conditions, two of which are specifically recommended for sex offenders by the Sentencing Guidelines. See U.S.S.G. § 5D1.3(d)(7). Perazza-Mercado does not challenge the special condition requiring him to participate in a treatment and monitoring program for sex offenders pursuant to U.S.S.G. § 5D1.3(d)(7)(A); the condition that he submit to reasonable searches of his person and property by his probation officer pursuant to U.S.S.G. § 5D1.3(d)(7)(C); or the court's prohibitions on working with minors and residing or loitering near places where children would typically congregate.[7] However, he does challenge two other special conditions imposed by the trial court: one that prohibited him from accessing the internet in his home, and another that banned him from possessing any type of pornographic material.

At the sentencing hearing, Perazza-Mercado challenged the court's "prohibition as to the computer at home," explaining that

---

[7] At sentencing, the court described these limitations on defendant's interactions with children as follows:

> The defendant will also refrain from engaging in any specified occupation, business, or profession bearing a reasonable direct relationship or contact with the supervision of minors, or engage in any such specified occupation, business, or profession, in the same degree and in the same context in which he was engaged in this case. Specifically, he will not be allowed to work with children, in other words . . . .
>
> The defendant will not reside or loiter within 100 feet of school yards, play yards, arcades, or other places primarily used by children under the age of 17.

-7-

"we must not forget that Mr. Perazza is a married person, so -- and his wife uses that as a work tool.  Every day, more and more people are using that as a work tool."  The court responded, "That is a prohibition.  There are ways to deal with that.  The wife has a computer.  The wife can get in contact with the Probation Department, and they can password protect the computer."[8]  Perazza-Mercado's counsel also noted, in the context of the internet ban, that the police found no child pornography when they searched appellant's home, including his computer.  Perazza-Mercado did not object to the pornography ban at sentencing.

On appeal, Perazza-Mercado raises two issues: (1) whether the district court abused its discretion in banning his access to the internet in his home, and (2) whether the district court committed plain error by prohibiting him from possessing any kind of pornography.

### III.

Whether a court may impose a total ban on a defendant's home internet use as a condition of supervised release is an issue of first impression in this circuit.  In this case, we address the validity of such a condition only in a narrow set of circumstances: where the defendant has no history of impermissible internet use

---

[8] The impact of the restriction on Perazza-Mercado's wife was not addressed by the parties in their briefs or at argument, and we therefore do not consider it.

and the internet was not an instrumentality of the offense of conviction.

When a defendant objects to the imposition of a special condition at the time of sentencing, we review the district court's decision to impose the condition for abuse of discretion. United States v. York, 357 F.3d 14, 19 (1st Cir. 2004). To assess the validity of such conditions, we apply 18 U.S.C. § 3583(d) and U.S.S.G § 5D1.3(b), which require that special conditions cause "no greater deprivation of liberty than is reasonably necessary" to achieve the goals of supervised release, 18 U.S.C. § 3583(d)(2), and that the conditions be "reasonably related" both to these goals and to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3583(d)(1); see also 18 U.S.C. § 3553(a)(1).

The purposes of supervised release are the same as the purposes of sentencing generally, which are set forth in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical

                   care, or other correctional treatment in the
                   most effective manner.

See also U.S.S.G. § 5D1.3(b)(2). In order to determine the most appropriate way to achieve these objectives in a particular case, a court must consider the nature and circumstances of the offense and the defendant's individual characteristics and prior conduct, as required by 18 U.S.C. § 3553(a)(1).

        Perazza-Mercado asserts that there was no relationship between the internet and his offense, and that there is no evidence that he has ever used the internet to view or download child pornography or inappropriately communicate with minors. Therefore, he argues, the internet restriction would not advance the aims of deterrence or protecting the public from future criminal conduct. See 18 U.S.C. § 3553(a)(2)(B) and (C). Moreover, he contends that such a sweeping restriction on his internet access would unnecessarily hinder his ability to engage in internet use essential to his rehabilitation. For these reasons, he claims that the home internet restriction is not reasonably related to his personal characteristics or his offense (as required by 18 U.S.C. § 3583(d)(1)), and that it causes a greater deprivation of liberty than necessary to carry out the goals of supervised release (see 18 U.S.C. § 3583(d)(2)).

        Relying on language from United States v. Smith, 436 F.3d 307 (1st Cir. 2006), the government argues that if a challenged condition is intended to advance one of the goals of supervised

-10-

release, a restriction is not overbroad simply because there is no offense-specific nexus. See Smith, 436 F.3d at 311. ("[T]he critical test is not whether such an offense-specific nexus exists, but rather, whether the challenged condition is sufficiently related to one or more of the permissible goals of supervised release." (quoting United States v. Brown, 235 F.3d 2, 6 (1st Cir. 2000)) (internal quotation marks omitted)). The government argues that the internet condition, while perhaps not connected to Perazza-Mercado's specific offense of conviction, is related to two of the goals of supervised release: namely, protecting the public from further crimes by the defendant and his rehabilitation.[9] The government correctly notes both that the Guidelines do not require a direct relationship between the offense and the condition, and also that we must focus on whether the condition is "reasonably related" to one or more of the goals of supervised release. However, the government does not fully acknowledge that the Guidelines also require us to consider whether the challenged condition is reasonably related to the "history and characteristics of the defendant" and whether the condition deprives Perazza-

---

[9] In invoking those goals of supervised release, the government cites United States v. Johnson, 446 F.3d 272, 281 (2d Cir. 2006), for the proposition that a restriction on internet use will keep an offender away from an instrumentality of his offenses. As we have explained, there is no evidence in this case that the internet was in any way an instrumentality of Perazza-Mercado's offense.

-11-

Mercado of more liberty than is reasonably necessary to achieve the goals that the statute describes. 18 U.S.C. § 3583(d).

With these requirements in mind, our sister circuits have upheld broad restrictions on internet access as a condition of supervised release where (1) the defendant used the internet in the underlying offense; (2) the defendant had a history of improperly using the internet to engage in illegal conduct; or (3) particular and identifiable characteristics of the defendant suggested that such a restriction was warranted. See, e.g., United States v. Boston, 494 F.3d 660, 668 (8th Cir. 2007) (finding that "prohibiting [the defendant] from accessing or possessing a computer without written approval of his probation officer[] did not constitute an abuse of discretion because it was not absolute" and because of evidence that defendant had used computers to print out images of child pornography); United States v. Johnson, 446 F.3d 272, 282-83 (2d Cir. 2006) (upholding an absolute ban on internet use where defendant's sophisticated computer skills would enable him to circumvent monitoring software, allowing him to continue the offense of having sexually explicit conversations with minors and luring minors into having sex with him); United States v. Paul, 274 F.3d 155, 169 (5th Cir. 2001) (affirming total ban on defendant's internet and computer use where he had previously used the internet to "encourage exploitation of children by seeking out" other pedophiles and advising them on how to locate potential child

-12-

victims); <u>United States</u> v. <u>Alvarez</u>, 478 F.3d 864, 868 (8th Cir. 2007) (affirming a condition prohibiting residential internet access where, due to the defendant's characteristics, "severe restrictions may [have been] the only way to prevent [defendant] from accessing prohibited material" due to a documented "problem with self control").

Conversely, in cases where there is an insufficient nexus with a defendant's conduct or characteristics, courts have vacated supervised release conditions restricting internet access. For example, in <u>United States</u> v. <u>Freeman</u>, 316 F.3d 386 (3d Cir. 2003), "there [was] nothing in t[he] record to suggest that [defendant] ha[d] used the internet to contact young children" or solicit inappropriate sexual contact. <u>Id.</u> at 392. Accordingly, the court found that a restriction forbidding defendant from owning a computer or accessing the internet without the approval of his probation officer was "overly broad." <u>Id.</u>[10]

The reluctance of many of our sister circuits to uphold a ban on internet use unless the internet was integral to the offense of conviction and/or the defendant's history of misconduct reflects an awareness that supervised release is supposed to

---

[10] Other circuit court decisions have gone even further and suggested that severe restrictions on a defendant's internet access are invalid <u>even if</u> the defendant had previously used the internet for certain kinds of illegal activity. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Sofsky</u>, 287 F.3d 122, 126-27 (2d Cir. 2002); <u>United States</u> v. <u>Crume</u>, 422 F.3d 728, 733 (8th Cir. 2005); <u>United States</u> v. <u>Holm</u>, 326 F.3d 872, 878 (7th Cir. 2003).

advance the rehabilitation of the defendant. "[T]he ultimate purpose of supervised release is its eventual end and the offender's return to society." Frank E. Correll, Jr., "You Fall into Scylla in Seeking to Avoid Charybdis": The Second Circuit's Pragmatic Approach to Supervised Release for Sex Offenders, 49 Wm. & Mary L. Rev. 681, 703-04 (2007). Therefore, "the value of a release program as a rehabilitative tool mirrors the extent to which the conditions of supervised release simulate life after the program's end." Id. at 703. Unduly harsh conditions would, instead of "facilitat[ing] an offender's transition back into the every day life of the community," be a "significant barrier to a full reentry into society." Id. at 703-04.

Not surprisingly, then, the Guidelines mandate that a sentencing court consider the implications of any special condition of supervised release on a defendant's potential rehabilitation. Specifically, the Guidelines insist that supervised release must "provide the defendant with needed educational or vocational training . . . and other correctional treatment in the most effective manner." 18 U.S.C. § 3553(b)(1)(D).

We recognize that the district court's prohibition on any access to the internet at home is not a total ban on appellant's use of the internet.[11] Thus, under the condition imposed by the

---

[11] Although the district court did not explain its basis for differentiating between defendant's use of the internet inside and outside the home, it may have believed that he would be less likely

-14-

district court, Perazza-Mercado could use the internet in a library, a coffee shop, or at the home of a friend or neighbor. Most importantly, the condition, as written, would permit Perazza-Mercado to use the internet in an office setting, thereby enabling him to take a job that requires internet use. Certainly, the freedom to use the internet in a professional environment might lessen the negative impact the condition would otherwise have on Perazza-Mercado's educational and vocational pursuits. However, if the district court had concluded that appellant's internet use would facilitate his unlawful sexual contact with a minor, allowing him unlimited access outside the home seems inconsistent with that concern. In other words, the district court's failure to impose any restriction on Perazza-Mercado's non-residential internet usage undermines the rationale for ordering a complete ban on his use of the internet at home.

Moreover, we must be cognizant of the importance of the internet in today's world. An undue restriction on internet use "renders modern life -- in which, for example, the government strongly encourages taxpayers to file their returns electronically, where more and more commerce is conducted on-line, and where vast

---

to engage in illegal conduct in a public place than from the privacy of his own residence. If that was indeed the court's rationale, we think that this distinction does not accurately reflect all of the possibilities for internet use outside of the home which would duplicate many of the privacy protections of home use.

amounts of government information are communicated via website --
exceptionally difficult." United States v. Holm, 326 F.3d 872, 878
(7th Cir. 2003); see also United States v. Voelker, 489 F.3d 139,
145 (3d Cir. 2007) ("The ubiquitous presence of the internet and the
all-encompassing nature of the information it contains are too
obvious to require extensive citation or discussion."); United
States v. Peterson, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and
Internet access have become virtually indispensable in the modern
world of communications and information gathering.").  In addition,
there are many legal activities on the internet that are not easily
conducted in public.  For example, online banking or managing
medical records are potentially important activities that one might
not wish to conduct in public because of a legitimate interest in
keeping the information private.

    In light of the "ubiquitous presence" of the internet and
the "all-encompassing nature of the information it contains,"
Voelker, 489 F.3d at 145, a total ban on Perazza-Mercado's internet
use at home seems inconsistent with the vocational and educational
goals of supervised release.  Although appellant's actions were
indisputably abhorrent, the restriction on his internet use must
still meet the statutory requirements.  Prohibiting Perazza-Mercado
from logging onto the internet from home, without a substantial
justification for doing so, would be an excessive deprivation of
liberty if it prevented him from engaging in the kind of educational

-16-

and vocational training required for the transition from his prior employment as a teacher into a new and appropriate career. For example, if he is occupied during the day interviewing for jobs, he may need to look for new job postings early in the morning or late at night, when he may not be able to easily access the internet from public spaces.

Our concerns about the unqualified prohibition of home internet use are even more salient because the conditions of Perazza-Mercado's supervised release will only take effect in a few years, after the completion of his prison sentence. The importance of the internet in modern life has steadily increased over time, and we have no reason to believe that this trend will end. Therefore, given the nature of the offense and the characteristics of the defendant, we conclude that requiring Perazza-Mercado to leave his home in order to take advantage of many of the vocational and educational opportunities offered by the internet is a greater deprivation of his liberty than is reasonably necessary for his rehabilitation.

Nevertheless, our concern regarding a categorical residential internet ban does not imply that Perazza-Mercado is entitled to unlimited internet access, particularly if a "relatively narrowly-tailored condition" would "readily accomplish[] the goal of restricting use of the Internet and more delicately balance[] the protection of the public with the goals of sentencing." United

States v. Zinn, 321 F.3d 1084, 1093 (11th Cir. 2003) (quoting United States v. Walser, 275 F. 3d 981, 988 (10th Cir. 2001)). See also Brown, 235 F.3d at 4 ("[T]he [federal sentencing] guidelines contemplate . . . that the sentencing court will tailor supervised release conditions to fit the circumstances of the offense and the characteristics of the offender.") Although the internet did not play a role in the sexual misconduct which was the basis for his conviction, we must also consider Perazza-Mercado's documented propensity for inappropriate behavior towards young girls. The personal characteristics of the defendant, even though they do not reflect any history of computer misuse, could justify a targeted limitation on internet use involving certain kinds of chat rooms or any sites involving children, especially in light of research suggesting that convicted sex offenders are likely to reoffend. See Roe v. Marcotte, 193 F.3d 72, 82 (2d Cir. 1999) (noting that studies indicated a high rate of recidivism among sexual offenders).[12]

Because of this concern, and the nature of his prior conduct, other conditions of Perazza-Mercado's supervised release forbid him from working with children in a professional capacity and residing or loitering near areas which are frequented by groups of children. See supra note 7. We can imagine, and modern technology permits, an internet prohibition which would essentially replicate these real-world limitations. As many of our sister circuits have

---

[12] See also McKune v. Lile, 536 U.S. 24, 33 (2002).

recognized, advances in technology offer courts the tools and flexibility to "fashion precise restrictions" that would protect the public as contemplated by § 3553 "and at the same time reflect the realities of [defendant]'s rehabilitation prospects." Holm, 326 F.3d at 879.[13] See, e.g., United States v. White, 244 F.3d 1199, 1206 (10th Cir. 2001) (describing technologies which would limit defendant's "use of the Internet to obtain child pornography or other sexually explicit behavior").

In particular, the Second Circuit has examined in some detail the various technologies available to monitor the computer usage of sex offenders. See United States v. Lifshitz, 369 F.3d 173, 191-93 (2d Cir. 2004). After a "brief survey of methods of monitoring," the court noted that "even the varieties of products and techniques currently available diverge vastly in their breadth, and in their implications for computer users' privacy." Id. at 191. For example, the court described two axes along which to distinguish monitoring technologies. While some software is designed to be installed on an individual's personal computer, other monitoring methods rely on information about the offender's internet use which is obtained from his Internet Service Provider (ISP). Id. Second, the Lifshitz court differentiated between software which focused on

---

[13] See generally Correll, Jr., supra, pp. 682-702; Dane C. Miller et al., Conditions of Supervision that Limit an Offender's Access to Computers and Internet Services: Recent Cases and Emerging Technology, 42 No. 4 Crim. L. Bull. 3 (July-Aug. 2006).

-19-

specific types of unauthorized materials, and other programs which allowed a probation officer to monitor all of the user's online activities. Id. Although Lifshitz arose in the context of a probation condition, the analysis that a district court would have to undertake to arrive at a valid condition of supervised release is substantially similar. Additionally, an emerging body of literature provides helpful guidance to sentencing judges as to the features of available technology and the principles that a court should consider in selecting among them. See, e.g., Miller, supra note 13; Stephen Brake & Jim Tanner, Determining The Need for Internet Monitoring of Sex Offenders, available at http://www.kbsolutions.com/MonitoringNeed.pdf (last visited Nov. 25, 2008); Jim Tanner, Rethinking Sex Computer Management of Sex Offenders Under Community Supervision, http://www.kbsolutions.com/rcm.pdf (2007); Brian K. Payne & Matthew DeMichele, Warning: Sex Offenders Need to be Supervised in the Community, 72 Federal Probation 37 (Jun. 2008). Therefore, we will remand to the district court so that, in light of the variety of technological options at its disposal, it may devise an appropriate restriction on Perazza-Mercado's internet use. Such an approach reconciles our concern that a convicted sex offender could use the internet to continue a pattern of inappropriate behavior towards minors with the potential for legitimate uses of the internet that might be crucial to that individual's rehabilitation.

Perazza-Mercado also contests the condition of supervised release that prohibits him from possessing pornographic materials. This challenge presents another issue of first impression in our circuit. We have yet to consider whether a ban on pornographic material as a condition of supervised release for an individual convicted of sexual contact with a minor constitutes error when there is no evidence that possession of such material has any relationship to the offense of conviction and there is no evidence in the record that the appellant previously possessed such materials.

At Perazza-Mercado's sentencing hearing, the district court stated that "[i]f he is ever found to be in possession of any kind of pornographic material, that will be an automatic violation of his terms of supervision." Neither the prosecutor nor the probation officer requested this specific condition. The PSR said nothing about it. Perazza-Mercado concedes that we must review this claim for plain error because he did not object to this condition at sentencing.[14]  York, 357 F.3d at 19. To establish plain error,

---

[14] Perazza-Mercado makes a passing reference in his brief to the absence of advance notice that the court was contemplating a ban on pornography. In York, we suggested that if a defendant could not have reasonably anticipated the special conditions imposed by the court, we may review a forfeited objection for abuse of discretion rather than plain error. 357 F.3d at 19. We need not consider this issue, however, because the appellant concedes that plain error applies.

Perazza-Mercado must show that "there is (1) an error (2) that is plain, and that the error (3) affects substantial rights and (4) seriously impairs the fairness, integrity, or public reputation of judicial proceedings." United States v. Prochner, 417 F.3d 54, 59 (1st Cir. 2005).

Perazza-Mercado argues that this condition is impermissible because it (1) restricts his ability to possess "perfectly legal adult pornography," (2) restricts his liberty interest more than reasonably necessary in light of the goals of supervised release, and (3) does not provide fair warning as to what constitutes pornography due to the term's inherent ambiguity. To evaluate these arguments, it would have been helpful if the district court had explained the basis for its prohibition on the possession of pornography. Yet the district court offered no explanation for this condition. "There is no question that a district court is required to provide a reasoned and case-specific explanation for the sentence it imposes." United States v. Gilman, 478 F.3d 440, 446 (1st Cir. 2007). Such an explanation enables appellate review. Id.; see also United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc). Accordingly, "courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions." United States v. Warren, 186 F.3d 358, 366 (3d Cir. 1999).

However, even in the absence of an explanation from the court, "a court's reasoning can often be inferred" after an examination of the record. Jimenez-Beltre, 440 F.3d at 519. While we "have on occasion gone to significant lengths in inferring the reasoning behind, and thus in affirming, some less-than-explicit explanations by district courts[,] . . . there are limits" to our willingness to supply our own justification for a particular sentence. Gilman, 478 F. 3d at 446. A trial court's "decision to impose [a] challenged condition must have adequate evidentiary support in the record." York, 357 F.3d at 20; see also United States v. Scherrer, 444 F.3d 91, 95-96 (1st Cir. 2006) (en banc) (remanding to allow sentencing judge to strike several conditions of supervised release where "the need for those conditions [was] unsupported by the record"); United States v. Roy, 438 F.3d 140, 144 (1st Cir. 2006) (stating that conditions of supervised release must have "adequate evidentiary support in the record"); Brown, 235 F.3d at 6 ("min[ing]" the record "to determine whether the sentencing court had a reasonable basis" for the imposition of a condition of supervised release, and finding a "meaningful connection between the condition and the appellant's criminal history"). "A condition with no basis in the record or with only the most tenuous basis, will inevitably violate 3585(d)(2)'s command that such conditions involve no greater deprivation of liberty than is reasonably necessary." United States v. Pruden, 398 F.3d 241, 249 (3d Cir. 2005) (internal

quotation marks omitted).  Thus, where we are unable, through our own examination of the record, to discern the court's reasoning, "'it is incumbent upon us to vacate, though not necessarily to reverse.'"  Gilman, 478 F.3d at 446-47 (quoting United States v. Feliz, 453 F.3d 33, 36 (1st Cir. 2006)); see also United States v. Rhone, 535 F.3d 812 (8th Cir. 2008) (vacating and remanding for resentencing where district court failed to adequately explain and record did not support condition of supervised release requiring defendant to register as a sexual offender); Voelker, 489 F.3d at 155 (remanding for resentencing because of district court's failure to explain condition prohibiting defendant from possessing sexually explicit materials); United States v. Wallace, 461 F.3d 15, 43-45 (1st Cir. 2006) (same with respect to court's failure to explain reasons for departing from sentencing guidelines).

In this case, there is no evidence in the record that justifies the ban on Perazza-Mercado's possession of all forms of pornography.  There was no suggestion in the PSR or at sentencing that appellant had abused or even possessed pornography in the past, much less that it contributed to his offense or would be likely to do so in the future.[15]  We recognize that Perazza-Mercado's pattern

---

[15] To the contrary, as part of his objections to the PSR, appellant submitted the report of Dr. Jose R. Pando, a clinical psychologist.  Ironically, this evaluation contained the only mention of pornographic material in the entire record.  Perazza-Mercado had reported to Dr. Pando that "[d]uring his late adolescence and college years some of his friends lent him some adult movies, but he never developed a taste or any sort of habit

-24-

of illicit conduct toward young girls is cause for great concern, and, as we have explained, it certainly justifies some restriction on his internet access, which he could otherwise abuse at the expense of the public safety and deterrent goals of supervised release. In contrast, the record is devoid of any evidence suggesting that a complete ban on Perazza-Mercado's possession of pornography -- including legal material involving consenting adults -- would serve the same purposes.[16] If the district court believed that there was some relationship between the defendant's possession and use of adult pornography and the likelihood that he would engage in sexual misconduct involving young girls, the court should have explained the basis for that conclusion.

We emphasize that we are not, as a general matter, foreclosing the imposition of similar conditions in cases where pornography was not involved in the offense of conviction and there is no documented history of the defendant viewing such material.[17]

_____

for these kinds of activities." Certainly, the court was entitled to make a judgment on the appropriate weight to give this report. We mention it to show not only that the record is silent as to the need for imposing the ban on the possession of pornography, but also that the only piece of evidence that is directly on point suggests that the prohibition might have been unnecessary.

[16] Possession of child pornography is, of course, a crime. See, e.g., 18 U.S.C. § 2252. Also, under the Guidelines, one of the mandatory conditions of supervised release is a prohibition on the defendant's commission of any further federal, state, or local crimes. U.S.S.G. § 5D1.3(a)(1).

[17] See, e.g., United States v. Mark, 425 F.3d 505, 510 (8th Cir. 2005)(reserving judgment as to whether a particular condition

There may well be a reason to impose a pornography ban in such circumstances.  However, such a reason is not apparent from the record before us, which simply does not support the conclusion that the condition would promote the goals of supervised release without effecting a greater deprivation of liberty than reasonably necessary to achieve those goals.

The dissent sees the record differently.  In fact, the dissent sees no error at all, let alone plain error, in the trial court's imposition of the total pornography ban, explicitly stating that it would uphold the condition even under the abuse of discretion standard of review.  This is so because the dissent concludes that the fact of conviction, in conjunction with Perazza-Mercado's "pattern of illicit conduct" toward young girls, justifies the ban.  According to the dissent, the ban on Perazza-Mercado's possession of adult pornography is necessary to prevent his future criminal conduct against minors.  In asserting this proposition, the dissent makes the behavioral assumption that access to adult pornography increases the likelihood that any individual convicted of sexual misconduct with a minor would reoffend.  Other than asserting that this assumption is "rather obvious," the dissent

_____

may be appropriate in other cases, but finding the record before it to be "insufficiently developed to justify the condition, both with respect to evidence concerning potential alternatives and an explanation from the district court as to why less restrictive alternatives are inadequate").

offers no support for it.[18]  Neither the probation officer nor the

_____

[18]  In Voelker, 489 F.3d at 150, the court considered and vacated a pornography ban similar to the one at issue here.  The court acknowledged that a sentencing judge could, "perfectly consonant with the Constitution, restrict [an offender's] access to sexually oriented materials."  Id. (quotation marks and citation omitted).  However, the restriction must have a nexus "to the goals of supervised release," and the Voelker court found no such nexus in the case before it.  Id.  The court explained:

> We assume the [district] court believed a lifetime ban on possessing "sexually explicit materials" would further his rehabilitation and reduce the chances of recidivism. . . . However, nothing on this record suggests that sexually explicit material involving only adults contributed in any way to Voelker's offense, nor is there any reason to believe that viewing such material would cause Voelker to reoffend.

Id. at 151 (citation omitted).  On this record, the same is true here.  It is curious, therefore, that the dissent cites Voelker for the proposition that the fact of conviction alone justifies the pornography ban.  While the Voelker court did observe that "the conduct the defendant admitted to offers some support for this restriction," id. at 150, it did so in the context of striking down the condition, and in a case where it would have been far more reasonable to infer a link between the defendant's possession of pornography and the exploitation of minors.  The court described Voelker's conduct as follows:

> During [an] online communication, Voelker . . . briefly exposed the buttocks of his three year-old daughter over a webcam that was connected to his computer.
>     When the FBI subsequently confronted Voelker with this information, he acknowledged downloading child pornography onto his computer, and he directed agents to computer discs where the files were stored.  He also admitted to partially exposing his daughter over his webcam, but he insisted that statements he had made about sexual contact with minors or offering his daughter for sex were merely gratuitous statements in the nature of "role-playing."  He claimed that he never intended to follow through on any of those statements but admitted that he engaged in such online "role-playing" on a daily basis.  Agents subsequently searched Voelker's home pursuant to a warrant and seized computer files

prosecutor in this case made such a behavioral claim, and the trial judge did not invoke any experience with prior sentences to support the ban on adult pornography.

The logic of the dissent is that the ban on the possession of adult pornography should be a condition of supervised release in every case where a defendant is convicted of a sexual offense with a minor. The Sentencing Commission creates such generally applicable conditions of supervised release, not appellate judges. The Commission has not promulgated such a condition, despite the Guidelines' intricate and detailed framework of conditions of supervised release. Guidelines § 5D1.3(a) sets out the mandatory conditions of supervised release for all offenders, which include prohibitions on the commission of further crimes and the use or possession of controlled substances, a requirement that the defendant submit a DNA sample and, for certain sexual offenders, a requirement that they register as sexual offenders with the state in which they reside.[19] There are also certain "standard" conditions of supervised release that are recommended for all cases,

---

containing child pornography.
Id. at 142-43.

[19] Subsection (b) of that Guideline sets forth the general requirements, described at length supra, that any other conditions must be reasonably related to the nature and circumstances of the offense or the history and characteristics of the defendant and the goals of supervised release and that they involve no greater deprivation of liberty than is reasonably necessary to effectuate those goals.

many of which are explicitly characterized as "expansions of the conditions required by statute," U.S.S.G. § 5D1.3(c), and all of which the district court imposed in this case. Next, there are certain "special" conditions recommended in specific circumstances, including, for individuals convicted of sexual offenses against minors (as defined by Application Note 1 to U.S.S.G. § 5D1.2), a condition "requiring the defendant to participate in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders," a condition "limiting the use of a computer or an interactive computer service in cases in which the defendant used such items," and a condition requiring the defendant to submit to certain searches by law enforcement officers. U.S.S.G. § 5D1.3(d)(7)(A)-(C).[20]

Despite the Guidelines' specificity in prescribing or suggesting conditions for particular cases (including subsection (e) of § 5D1.3, which lists "special conditions" that "may be appropriate on a case-by-case basis"), the Guidelines do not recognize the connection between the possession of adult pornography

---

[20] As we have explained, the district court followed U.S.S.G. § 5D1.3(d)(7)(A) and (C) by requiring Perazza-Mercado to participate in a treatment and monitoring program for sexual offenders and to submit to searches of his person and property by his probation officer. Subsection (B) of § 5D1.3(d)(7) suggests "a condition limiting the use of a computer or an interactive computer service in cases in which the defendant used such items" (emphasis added). As we described in Part III, neither computers nor the internet played a role in Perazza-Mercado's offense. Therefore, the internet restriction imposed by the trial court did not draw its rationale from § 5D1.3(d)(7)(B).

and the sexual abuse of minors that the dissent claims is self-evident. Under these circumstances, in the absence of an explanation from the district court, or any record evidence supporting its decision, an appellate tribunal should not assume the role of the Sentencing Commission in order to justify a district court's decision.

Here, the imposition of the ban on the possession of adult pornography as a condition of supervised release, without any explanation and without any apparent basis in the record for the condition, constitutes an error that is plain. Nevertheless, even when defendants are able to demonstrate an error of sufficient magnitude to satisfy the first two prongs of plain error review, the plain error standard requires that they must still establish prejudice —— the third prong of plain error review. This prong requires a showing that the error was "prejudicial in the sense that '[i]t must have affected the outcome of the district court proceedings.'" Gilman, 478 F.3d at 447 (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). "In the sentencing context that translates to a requirement that a defendant must paint a picture that illuminates a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence." Id. (internal quotation marks omitted). Given the lack of any explanation for the imposition of the prohibition on the possession of pornography, and given the absence of any evidence in

the record that permits us to infer the basis for the ban, there is a reasonable probability that the court might not have imposed the prohibition if it had fulfilled its obligation to explain the basis for the condition or at least made sure that the record illuminated the basis for the condition.  See Wallace, 461 F.3d at 44 (noting that if the sentencing court were required to supply an adequate explanation for its actions, it "might (although by no means must) calculate a sentence upon remand different than the precise sentence it chose through its initial, erroneous . . . analysis").

With respect to the fourth prong of plain error review, the court imposed an absolute prohibition on the possession of pornography.  It did so without explanation and without any apparent grounding in the record.  There is a reasonable probability that the court might not have imposed this prohibition if it had not committed the plain procedural error that underlies it.  We cannot endorse the summary imposition of such a significant prohibition without impairing the "fairness, integrity, or public reputation of the judicial proceedings." Wallace, 461 F.3d at 49 (quotation marks and citation omitted).

Therefore, we must also vacate the special condition prohibiting Perazza-Mercado from possessing any form of pornography. The district court may revisit this issue at the resentencing of the defendant.  If it chooses to reimpose such a condition, it must explain the basis for doing so and its grounding in the record.  The

-31-

resentencing shall be limited to a re-examination of the conditions of supervised release that underlie this appeal.

<u>Vacated and remanded for resentencing.</u>

**–Dissenting opinion follows-**

**HOWARD**, <u>Circuit Judge</u>, dissenting in part. I agree that the supervised release condition banning all home internet use is too broad. I dissent in part, however, because I believe the second supervised release condition -- prohibiting Perazza-Mercado from possessing "pornographic materials" -- survives plain error review.

In vacating the district court's ban on pornography, the majority relies primarily on the ground that the condition lacks support in the evidentiary record because "[there is] no suggestion in the PSR or at sentencing that appellant had abused or even possessed pornography in the past, much less that it contributed to his offense or would be likely to do so in the future."

The majority thus imposes a requirement that a supervised release condition must bear a more precise connection to a defendant's past than our cases demand. Rather, as we have provided many times before, a supervised release condition need only be "reasonably" related to one of the four factors set forward in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(d)(1); <u>United States</u> v. <u>Prochner</u>, 417 F.3d 54, 63 (1st Cir. 2005); <u>United States</u> v. <u>York</u>, 357 F.3d 14, 17 (1st Cir. 2004) (same); <u>see also</u> <u>United States</u> v. <u>Smith</u>, 436 F.3d 307, 311 (1st Cir. 2008) ("[T]he critical test is <u>not</u> whether [] an offense-specific nexus exists but, rather, 'whether the challenged condition is sufficiently related to one or more [of the four] permissible goals of supervised release.'") (citing <u>United States</u> v. <u>Brown</u>, 235 F.3d 2, 6 (1st Cir. 2000));

-33-

<u>United States</u> v. <u>Bee</u>, 162 F.3d 1232, 1235 (9th Cir. 1998) (upholding ban on sexually stimulating material where defendant was convicted of sexually abusing a minor).

A ban on pornographic material is reasonably related to at least two goals of supervised release. Perazza-Mercado pled guilty to sexually abusing a minor. Accordingly, preventing him from accessing pornographic materials is reasonably related to both the goal of deterring future criminal conduct against minors and the goal of protecting the public against further crimes involving the exploitation of minors. <u>See</u> § 3553 (a)(2)(B), (C). It was reasonable for the sentencing judge to think, and in my view the inference is rather obvious, that the general ban against pornography will provide a buffer against Perazza-Mercado acquiring child pornography. Furthermore, and again this hardly needed to be stated, allowing unfettered access to adult pornography could lead Perazza-Mercado -- who has already evinced a predilection towards exploiting minors sexually -- to places where opportunities may exist to commit other crimes against minors.[21]

As the condition is reasonably related to the goals of supervised release, I am left with the majority's apparent position that the fact of conviction in this case cannot constitute evidentiary support for the ban on pornographic material. I disagree with that position; it obligates us to ignore what is

_____

[21]The majority mischaracterizes these opportunity concerns as based on "behavioral assumptions."

perhaps the most critical component of a defendant's criminal history when reviewing supervised release conditions. In determining whether the imposed conditions are justified, we are not required to turn a blind eye to the fact that Perazza-Mercado admitted to sexually abusing a minor. United States v. Voelker, 489 F.3d 139, 150 (3d Cir. 2007) ("Although the court did not provide us with an explanation for this condition [], the conduct the defendant admitted to offers some support for this restriction."); see United States v. Brogdon, 503 F.3d 555, 565 (6th Cir. 2007) (relying on defendant's previous convictions to support the condition imposed); see also United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (establishing that a "court's reasoning can often be inferred" by examining the record).

Aside from our disagreement about the significance of the fact of conviction, there is additional evidentiary support for the supervised release condition in this case. As part of his plea agreement, Perazza-Mercado admitted to past behavior which the majority acknowledges exemplifies a "pattern of illicit conduct toward young girls." Even were we exercising an abuse of discretion standard of review, this evidence, in conjunction with the fact of conviction, justifies the supervised release condition at issue here. Therefore, I cannot agree that, on plain error review, allowing the ban on pornographic material to stand would seriously impugn the "fairness, integrity, or public reputation of judicial

proceedings."  See United States v. Torres, 541 F.3d 48, 53 (1st Cir. 2008).

The majority criticizes my approach as mandating a ban on the possession of adult pornography in every case where a defendant is convicted of a sexual offense with a minor.  The criticism is misplaced.  The Sentencing Guidelines, in § 5D1.3(a), establish mandatory conditions of supervised release.  Other conditions, such as the one imposed here, are not mandatory but are permitted if justified.  18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(b).  Such conditions of supervised release may be imposed in one case, without being required in all similar cases, even where there has been a conviction for sexually abusing a minor and a "pattern of illicit conduct toward young girls."  It is the province of a sentencing judge, who is closest to the case, to determine appropriate supervised release conditions.  Our task here is to review whether the district court committed plain error in imposing the condition.  In concluding that the district court did not commit plain error in imposing the additional condition as reasonably necessary, we would in no way be determining that the condition must be imposed in every similar case.[22]

_____

[22]Were the majority's criticism justified, it would appear to apply with equal force to our conclusion that a targeted limitation on internet use would be acceptable.  We say that use of the internet may be restricted, even though "the internet did not play a role in the sexual misconduct which was the basis for [the] conviction."  This is so because "we must also consider Perazza-Mercado's documented propensity for inappropriate behavior towards young girls" and research suggests "that convicted sex offenders

-36-

That said, I am uneasy about the sentencing court's use of the undefined word "pornography."  The court prohibited the defendant from acquiring "pornographic material," but did not elaborate on the extent of the condition's reach.  Nevertheless, in light of the lack of case law in this circuit, and the generic bans on pornography upheld in cases like United States v. Bee, 162 F.3d 1232 (9th Cir. 1998)[23] and United States v. Boston, 494 F.3d 660 (8th Cir. 2007),[24] I cannot say the district court plainly erred in imposing such a condition.  See United States v. Griffin, 524 F.3d 71, 77 (1st Cir. 2008) (recognizing that an error is "plain" if it is "obvious and clear under current law"); see also United States v. Gallo, 20 F.3d 7, 12 (1st Cir. 1993) (noting that conditions of conditional release "may afford fair warning even if they are not

_____

are likely to reoffend."  Prohibiting access to internet pornography sites and other forms of pornography provides a buffer against access to child pornography, questionable chat rooms and other avenues to illegality.  Finding such a condition supportable as "reasonably necessary" in this case is no more of an across-the-board mandate than is a targeted internet limitation.

[23] The condition in Bee provided:  "[The defendant shall] not possess any sexually stimulating or sexually oriented material as deemed inappropriate by [his] probation officer and/or treatment staff, or patronize any place where such material or entertainment is available."  Id. at 1234.

[24] The condition in Boston provided:  "[The defendant] shall not view or possess any form of pornography, sexually stimulating or sexually oriented material including books, videos, magazines, cut-outs or pornography of any kind as deemed inappropriate by the probation officer and/or treatment staff.  [The defendant] shall not enter any location where pornography or erotica are the primary products for purchase.  [The defendant] shall not any location where the primary function is to provide adult entertainment."  Id. at 667-68.

precise to the point of pedantry" and "can be written -- and must be read -- in a commonsense way").

I would be inclined to address this vagueness concern by imposing a limiting construction on the district court's condition. See United States v. Schave, 186 F.3d 839, 843-44 (7th Cir. 1999). A ban on pornographic materials depicting "sexually explicit" conduct, as defined in 18 U.S.C. § 2256(2)(A), would provide adequate notice to Perazza-Mercado about the condition's grasp. But, in light of the majority's remand of this condition, the district court will have the opportunity to consider not only the basis for the condition but also its scope.

_____